AO (Rev. 5/85) Criminal Complaint

FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

5-6-15

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| vs. | |
| ROLAND JOHNSON | CASE NUMBER: 3:15-mj-1018-J-PDB |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about January 22, 2015, in Nassau County, in the Middle District of Florida, defendant, ROLAND JOHNSON, did knowingly and intentionally distribute 5 grams or more of methamphetamine or 50 grams of or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(B). I further state that I am a Special Agent with Drug Enforcement Administration, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Signature of Complainant
Matthew Bowen, Task Force Officer
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

May 6, 2015                                  At          Jacksonville, Florida

PATRICIA D. BARKSDALE
United States Magistrate Judge
Name & Title of Judicial Officer                         Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Matthew Bowen, Task Force Officer (TFO), Drug Enforcement Administration, (DEA), Jacksonville District Office, Miami, Florida, having been duly sworn, depose and state as follows:

## INTRODUCTION

1.  I am a Task Force Officer of the Drug Enforcement Administration (DEA) assigned to the Jacksonville District Office, Miami Field Division. I have been a Task Force Officer with the DEA for more than ten years. Prior to my assignment with DEA, I was an Officer and Detective with the Fernandina Beach Police Department for 5 years.

2.  As a Task Force Officer of the Drug Enforcement Administration (DEA) assigned to the Jacksonville District Office, I am a federal law enforcement officer of the United States within the meaning of Rule 41, Federal Rules of Criminal Procedure; that is, a government agent who is engaged in enforcing the criminal laws of the United States. I have been a Task Force Officer with the DEA for over ten years, having been assigned to the Jacksonville District Office since February, 2004. Prior to being assigned to the Jacksonville District Office I was a Detective with the Fernandina Beach Police Department's Special Enforcement Unit (Narcotics) for approximately 4 years and a Patrol Officer for approximately one year. I was promoted to Sergeant of the Fernandina Beach Police Department in December of 2006 and maintained my current assignment with DEA. Throughout my law enforcement career, I have conducted investigations and enforcement operations for hundreds of narcotics transactions.

3. I attended the DEA Task Force Officer School, in Jacksonville, Florida, the DEA basic and advanced narcotics schools and several other schools through various organizations where I received specialized training in conducting narcotics investigations, including identifying techniques used by narcotics traffickers. Since then, I have participated in numerous investigations involving the possession, manufacture, distribution and importation of illegal drugs, including cocaine, ecstasy, heroin, marijuana, and methamphetamine, as well as methods used to finance drug transactions. I have also conducted or participated in physical, electronic and wire surveillances; execution of search warrants; debriefings of informants; reviews of taped conversations and the use of wire intercepts. I have arrested numerous individuals for various drug violations, and have spoken with numerous drug dealers and informants concerning the methods and practices of drug traffickers.

4. This affidavit is based upon an ongoing drug investigation, conversations with other law enforcement officers, information obtained through a confidential source, information obtained through the use of subpoenas, surveillance, training and experience and the events and circumstances as set forth below. Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest, it does not contain each and every detail about this investigation of which I am aware.

### INVESTIGATION

5. During December of 2014, agents, task force officers and I from DEA's Jacksonville resident office initiated an investigation into the drug trafficking

activities of Roland JOHNSON and his associates. The investigation was begun after I received information about JOHNSON from a documented Fernandina Beach Police Department confidential source, hereinafter referred to as CS.

6. The CS has an extensive criminal history that includes convictions for armed robbery, burglary, possession of cocaine, possession of drug paraphernalia, and sale of drugs within 1,000 feet of a school. The CS also has arrests but, according to the NCIC database, was not convicted for crimes including possession of marijuana, burglary, battery, trespassing and home invasion robbery. The CS is currently pending charges in Florida State Circuit Court for sale of methamphetamine and is cooperating with law enforcement in hopes of receiving judicial consideration for this pending charge. The CS has not yet received any benefit from the Florida State Circuit Court for his/her cooperation thus far. Prior to this investigation, the CS has never worked as a confidential source for neither the Fernandina Beach Police Department nor the Drug Enforcement Administration. The CS has proven to be reliable in this investigation and has never provided information that was later proven to be false.

7. According to the CS, he/she has known JOHNSON for approximately five years and was introduced to JOHNSON by a family member of the CS. According to the CS, the CS did not begin purchasing methamphetamine directly from JOHNSON until sometime in 2013 or 2014. The CS stated that he/she only purchased 1/8 ounce quantities of methamphetamine during each transaction from JOHNSON because that was all the CS could afford to purchase. The CS

estimated that he/she purchased methamphetamine from JOHNSON on approximately three different occasions prior to the CS beginning to cooperate with law enforcement. The CS also stated that he/she purchased methamphetamine from JOHNSON through JOHNSON'S girlfriend on at least two occasions. The CS said that JOHNSON always stated that he would sell the CS whatever quantity of methamphetamine the CS wished to purchase. The CS also stated that JOHNSON has bragged that he (JOHNSON) has multiple sources of supply for methamphetamine in the Alma, Georgia area.

8. On or around December 4, 2014, at the direction of law enforcement, the CS made an unrecorded telephone call to JOHNSON and asked JOHNSON to sell the CS seven (7) grams of methamphetamine. According to the CS, JOHNSON agreed and arrangements were made for JOHNSON to meet the CS in the area of the Florida/Georgia state line on December 5, 2014.

9. Prior to the transaction on December 5, 2014, the CS and his/her vehicle were searched for any illegal contraband with negative results. The CS was provided audio/video recording and transmitting equipment and was also provided $600.00 in serialized Official Authorized Funds to be used for the purchase of methamphetamine from JOHNSON.

10. DEA agents, task force officers, and I established surveillance in the area of the State Line Liquors bar located just south of the Florida/Georgia line, in Nassau County, Florida. Agents observed an off white or beige van parked in the parking lot of the bar and also observed JOHNSON standing in the parking lot near the vehicle. Upon the arrival of the CS, JOHNSON entered the CS's

vehicle and sat in the front passenger seat. According to the CS, during the ensuing meeting the CS gave the $600 OAF to JOHNSON in exchange for what JOHNSON represented to be seven (7) grams of methamphetamine. Upon the conclusion of the meeting with the CS, JOHNSON exited the CS's vehicle and walked over to the van and met with unidentified females. The CS was followed by agents from the State Line Liquors and surveillance of JOHNSON was terminated at that time. The CS was followed by and met with agents at a prearranged location. I recovered the methamphetamine from the CS and the CS and his/her vehicle were again searched for illegal contraband with negative results. I field tested the evidence purchased from JOHNSON and the results of the field test were positive for the presence of methamphetamine. I later viewed the video recording of the transaction made by the CS and was able to determine that JOHNSON did in fact sell the CS the suspected methamphetamine for $600.00. The DEA laboratory analysis of this drug exhibit indicated the substance was methamphetamine hydrochloride with a net weight of 6.3 grams.

11. On January 15, 2015, Fernandina Beach Police Detective Tina Smith and I meet with the CS for purposes of placing a consensually recorded telephone call to JOHNSON to order methamphetamine from JOHNSON. During the telephone call between JOHNSON and the CS, JOHNSON agreed to deliver the CS one ounce of methamphetamine in the near future.

12. On January 22, 2015, DEA agents, task force officers and I coordinated a second purchase of methamphetamine from JOHNSON who had previously agreed to bring one ounce of methamphetamine to the CS in Nassau County,

Florida. Prior to the transaction, the CS and his/her vehicle were searched for any illegal contraband with negative results. The CS was provided audio/video recording and transmitting equipment and was also provided $1,400.00 in serialized Official Authorized Funds to be used for the purchase of methamphetamine from JOHNSON. A consensually recorded telephone call was then made to JOHNSON by the CS. JOHNSON advised he would be there to meet the CS in approximately one hour. In just under one hour later, the CS again telephonically contacted JOHNSON who stated he was near Folkston, Georgia and was on the way to the Winn Dixie in Hillard, Florida. JOHNSON also advised he would be in gold Ford Explorer Sports Utility Vehicle (SUV).

13.     Surveillance was established in the parking lot of the Winn Dixie and the CS was followed by agents and task force officers to the parking lot of the Winn Dixie. A short time later, a gold Ford Explorer was observed as it pulled into and parked in the Family Dollar Store parking lot located at 551477 US1 Hillard, Florida. The occupants of the vehicle did not enter the store. After approximately five minutes, the Ford Explorer departed the Family Dollar Store and drove to the parking lot of the Winn Dixie Store. Agents observed the Ford Explorer travel slowly through the parking lot and eventually park directly beside the CS's vehicle. The Ford Explorer was occupied by four subjects, including Roland JOHNSON who exited from the driver side rear passenger seat of the Ford Explorer and made his way to the driver's side of the CS's vehicle. According to the CS, JOHNSON handed the CS a bag through the driver side window. JOHNSON then proceeded around the CS's vehicle and entered the

front passenger side of the CS vehicle. The other three unidentified occupants remained in the Explorer. According to the CS, once JOHNSON was inside the CS's vehicle, the CS counted out the $1400.00 OAF and gave the money to JOHNSON in exchange for the suspected methamphetamine. According to the CS, JOHNSON indicated that he had added an unknown substance to the methamphetamine. JOHNSON further advised that the female from whom he was getting the methamphetamine obtained the methamphetamine from Atlanta. JOHNSON said the unidentified female made four hour runs to Atlanta and he (JOHNSON) made three hour trips to meet the CS. JOHNSON further advised he did not deal with small twenty's or fifty's, because getting caught with the small amounts was the same as getting caught with larger amounts. According to the CS, the CS believed that JOHNSON meant that he (JOHNSON) didn't deal with selling twenty dollar or fifty dollar bags of methamphetamine because the penalties were the same as if JOHNSON were to be caught with larger amounts of methamphetamine. Near the end of the meeting with the CS, JOHNSON advised the CS that he (JOHNSON) recently purchased a Taurus seven shot .22 caliber firearm from an unidentified female for $100.00. Following the conversation in the CS's vehicle, JOHNSON exited the vehicle and returned to the Ford Explorer. The CS then departed the Winn Dixie parking lot, followed by FBPD Detectives and me.

14. Upon arriving at a prearranged meeting location, I recovered the suspected methamphetamine from the center console of the CS's vehicle. The drug evidence consisted of a brown paper bag containing one plastic zip-lock

bag and another bag fashioned from the torn off corner of a plastic shopping bag. Both plastic bags contained a pink tinted crystal like substance. A field test was conducted on the contents of the plastic bags which indicated a positive result for the presence of methamphetamine. The CS and CS vehicle were again searched for illegal contraband with negative results. I later viewed the video recording of the transaction made by the CS and was able to determine that JOHNSON did in fact sell the CS the suspected methamphetamine for $1400.00. The DEA laboratory analysis of this drug exhibit indicated the substance was methamphetamine hydrochloride with a net weight of 71.2 grams.

## CONCLUSION

15.   Based on the foregoing, I respectfully submit that there is probable cause to believe that Roland JOHNSON did knowingly and intentionally **distribute 5 grams or more of methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine**, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(B).

Task Force Officer Matthew Bowen
Drug Enforcement Administration

Sworn to and subscribed before me this _6th_ day of _May_, 2015.

HONORABLE PATRICIA D. BARKSDALE
United States Magistrate Judge

8